## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

ANDREW LEO LOPEZ,

        Plaintiff,

v.                                      No. CIV 97-1303 BB/KBM

UNITED STATES OF AMERICA, et al.,

        Defendants.

## **MEMORANDUM OPINION**

      This case is a consolidated action containing two distinct parts.  The first is Plaintiff's appeal, under the Administrative Procedures Act ("APA"), of an administrative decision disbarring him from practice before the Internal Revenue Service ("IRS").  The second is Plaintiff's lawsuit against the United States and a number of other Defendants, arising out of the circumstances surrounding his disbarment.  Upon order of this Court, the two actions have been consolidated.  This opinion addresses both the administrative appeal and the federal Defendants' amended motion to dismiss Plaintiff's amended complaint (Doc. 82).  Also outstanding is a motion by the non-federal Defendants to preclude Plaintiff from acting _pro se_ in this matter (Doc. 73).  However, since the non-federal Defendants have been dismissed from this case, their motion is moot and will be denied.  In addition, Plaintiff has filed a motion entitled Motion for Rulings Necessary to Properly Adjudicate  Appeal (Doc. 91).  This motion concerns the burden of proof  that should have been applied by the administrative law judge below.  As such, the motion is inextricably intertwined with the merits of Plaintiff's appeal, and a separate ruling on the motion is not necessary.  After considering the submissions of the parties and the applicable law, the Court will affirm the administrative agency decision.  The Court will also grant Defendants' motion to dismiss.

**Administrative Appeal**

**Standard of Review for this Court:** The initial decision disbarring Plaintiff from practicing before the IRS was issued by an administrative law judge ("ALJ"), following a hearing. Plaintiff appealed that decision to the Secretary of the Treasury Department. The Secretary upheld the ALJ's decision, and Plaintiff filed an appeal of the Secretary's decision in the United States Court of Appeals, District of Columbia Circuit. That appeal was transferred to this Court for review and decision. The Secretary's decision is reviewed under § 706 of the APA. *See Trimmer v. United States Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999). Consequently, that decision will be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* Factual determinations made by the administrative agency will not be disturbed unless they are not supported by substantial evidence. *Id.* Under the substantial-evidence standard, this Court cannot displace the agency's choice between two fairly conflicting views of the evidence, even if this Court might have made a different choice had the matter been before the Court *de novo*. *Id.* Since the Secretary's decision is in agreement with, and based in part on, the ALJ's credibility determinations, that decision is entitled to great deference. *Id.* However, matters of law decided by the Secretary are reviewed *de novo*, giving deference to the Secretary's interpretation of any governing statutes or regulations where that interpretation is reasonable. *Id.*

**Burden of Proof Below:** Plaintiff argues the ALJ applied the wrong burden of proof, deciding the case under a preponderance-of-the-evidence standard rather than a clear-and-convincing-evidence standard. Plaintiff contends the latter standard should have been applied because the result at stake, the loss of his ability to practice his livelihood, was important enough to trigger the higher burden. Defendants counter that not only is Plaintiff's argument wrong, but that it does not matter

2

what burden of proof was proper, because the ALJ stated he would render the same decision under either standard.  Since this issue involves a legal question, the Court addresses it *de novo*.

Plaintiff's argument is contrary to Supreme Court authority.  In *Steadman v. Securities Exchange Comm'n*, 450 U.S. 91, 101-103 (1981), the Supreme Court held that the preponderance-of-the-evidence standard applies to SEC disciplinary proceedings.  The Supreme Court so held despite the fact the SEC had permanently prohibited Steadman from practicing his profession.  This aspect of *Steadman* was recognized by the Supreme Court in *Herman & Maclean v. Huddleston*, 459 U.S. 375, 390 (1983) (noting that *Steadman* mandated the use of the preponderance standard even where severe consequences, such as permanent prohibition from practicing one's profession, are at stake).  *See also Benjamin v. Bureau of Alcohol, Tobacco, & Firearms*, 1993 WL 280397 (9th Cir. 1993) (under *Steadman*, preponderance of evidence is standard even when sanction results in loss of occupation).  Moreover, the Secretary's decision in this case does not completely prohibit Plaintiff from practicing his profession as a CPA, but merely restricts his ability to do so by preventing him from appearing before the IRS.  Therefore, the Court finds the ALJ correctly applied the preponderance-of-the-evidence burden of proof.

**Denial of Discovery:**  Plaintiff contends the administrative proceedings violated his right to due process because he was not allowed to conduct all the discovery he wanted prior to the hearing. The parties did exchange a number of documents, and depositions were taken of at least two witnesses who were not personally in attendance at the hearing.  However, the ALJ did not permit Plaintiff to depose other witnesses, and Plaintiff maintains he was therefore unable to properly prepare for the hearing and to cross-examine these witnesses.  He argues the Secretary's decision should be reversed and remanded for a new hearing, due to the alleged violation of due process.

Contrary to Plaintiff's argument, there is no general constitutional right to discovery in an administrative proceeding. *See Kelly v. United States Environmental Protection Admin.*, 203 F.3d 519, 523 (7th Cir. 2000). The Tenth Circuit has suggested that, where a complete denial of discovery can be shown to have caused clear prejudice, a due-process violation might result. *See Sims v. Nat'l Transp. Safety Bd.*, 662 F.2d 668, 671-72 (10th Cir. 1981). The *Sims* case does not help Plaintiff in this case, however, for two reasons. First, Plaintiff was not denied all discovery. Instead, by order of the ALJ, he was provided with most, if not all, of the documents the government planned to introduce at the hearing. (Dec. 6, 1993 order by ALJ, Vol. VI of administrative record). Plaintiff's complaint, therefore, concerns mainly his inability to depose the government's witnesses prior to the hearing. Plaintiff had ample time to prepare for the hearing and ample notice of the charges leveled against him. The Court therefore finds the discovery provided to Plaintiff was sufficient to meet the requirements of due process.

The second reason the *Sims* suggestion does not apply in this case is Plaintiff's failure to specify how he was prejudiced by the partial denial of discovery. It is not enough to simply allege generally, as Plaintiff has done, that he was prejudiced. Plaintiff has the burden of demonstrating specifically how the lack of depositions prior to the hearing prevented him from adequately preparing for the hearing. He has not done so. The Court's review of the transcript of the hearing shows Plaintiff mounted a vigorous defense against each charge. There is no indication that any of the testimony given by the witnesses was a surprise to Plaintiff, or that he was unable to effectively cross-examine those witnesses, despite his general claims to the contrary. In sum, Plaintiff has not demonstrated the type of actual, specific prejudice that would cause this Court to find the administrative proceedings did not comport with due process.

**Alleged Bias of ALJ:**  Plaintiff maintains the ALJ was biased against him and the case should be remanded to a different ALJ for decision.  The Court finds Plaintiff has failed to demonstrate the existence of such bias.  As Plaintiff knows, the type of bias that would disqualify a judge must arise from an extrajudicial source, rather than the judge's exposure to the facts of the case.  *See Andrew Leo Lopez v. Behles*, 14 F.3d 1497, 1501 (10th Cir. 1994).  Adverse rulings alone are insufficient grounds for disqualification, *see id.*, and such rulings are the only basis Plaintiff has presented for disqualification.  Finally, the Court's review of the administrative record has turned up no evidence of the ALJ's supposed bias.  The ALJ refused to admit evidence proffered by the government and ruled against the government on the merits of some of the charges.  These are not the actions of a biased judge.  This ground for reversal will be rejected.

**Constitutionality of Regulations:**  Plaintiff maintains that certain regulations found in 31 C.F.R. § 10 are unconstitutionally vague, and requests that this Court strike them.  No argument or authority has been presented for this proposition, and there is no explanation of how these provisions impact on the administrative appeal before this Court.  The Court therefore does not address Plaintiff's argument.

**Merits:**  The Secretary found Plaintiff engaged in "disreputable conduct" as defined in 31 C.F.R. § 10.51 (1999).  This finding was based on the ALJ's factual determinations as well as the ALJ's conclusion that Plaintiff had engaged in three different types of disreputable conduct.  The first example of disreputable conduct found by the ALJ was that Plaintiff participated in evading or attempting to evade Federal tax, or the payment thereof, by counseling clients to pay other creditors with funds which had been withheld from employee wages for deposit of federal payroll taxes.  The evidence in support of this charge was as follows.

First, the government introduced a transcript of a bankruptcy hearing, in which Plaintiff testified. Plaintiff had begun advising or working for two debtor companies in some capacity, in late January of 1990. At the hearing, Plaintiff was asked why one of the debtors owed $110,000 to $120,000 in post-petition taxes. Plaintiff responded by saying that in order to turn the company around, "our intent" was to use "funds that were internally generated." He continued his testimony by saying "We examined case history regarding tax payments, and while we did slow down tax payments, we never eliminated tax payments, although we slowed them down. We used the money for our pit, for our employee benefits, we used it for protection payments..." Plaintiff also testified that the decision as to where to allocate funds was a joint decision with the debtors and himself. He was then asked a crucial question: "So, the three of you decided that you would pay certain trade creditors, I presume, and not pay the Internal Revenue Service the taxes that were due, the federal withholding and FICA?" Plaintiff's response was short and to the point: "Correct."

This testimony alone, provided by Plaintiff himself, is sufficient to support the ALJ's finding that Plaintiff counseled his clients to direct tax payments, that should have been paid to the federal government, to pay off other debts or for other purposes. However, the transcript was not the only evidence offered by the government. The government also presented an exhibit prepared by Ms. Engdahl, an IRS employee who had reviewed the tax-payment history of the two debtor corporations. This exhibit shows that until late January 1990, when Plaintiff became involved professionally with the debtors, their tax payments were current, although some of the payments were made late. Following Plaintiff's entry into the picture, neither debtor made any payroll tax payments until July 1990, after the companies had been contacted by the IRS. At that time, each company paid two installments of payments, and then ceased making any payments until September 1990, following another contact from the IRS. In October, 1990, a trustee was appointed for the debtors and the tax

6

payments were made on a timely basis from that point on.  This circumstantial evidence corroborates Plaintiff's own testimony, providing additional evidence that Plaintiff participated in the decision to divert payroll tax funds to other purposes.

At the hearing, Plaintiff denied he had ever counseled the debtors to fail to pay their tax obligations.  He blamed the accusation on another individual, a convicted felon who, according to Plaintiff, owed the IRS a large amount of money.  The ALJ, however, weighed this self-serving testimony against Plaintiff's own testimony in the prior bankruptcy proceedings, and decided the testimony given in the bankruptcy proceedings was an accurate reflection of the facts.  This Court may not disturb that factual determination, since the evidence in the case was conflicting.  *See Trimmer, supra*.  The Court must therefore accept the ALJ's and Secretary's finding that Plaintiff counseled the debtor companies to divert payroll taxes withheld from employee's salaries, and to use those funds for purposes other than the payment of payroll taxes.  Such actions clearly constitute disreputable conduct within the meaning of 31 C.F.R. § 10.51(d).

The second charge sustained by the ALJ and the Secretary was that Plaintiff counseled clients to refuse to honor a lawful IRS summons, in violation of 31 C.F.R. § § 10.20 and 10.21.  The evidence in support of this charge included the following.  On December 4, 1991, Plaintiff and two of his clients met with two IRS revenue officers.  The revenue officers requested financial information from the clients, and Plaintiff justifiably responded  he could not provide the information because he had been retained that morning and needed time to review the clients' records.  The revenue officers issued a summons requiring the information to be provided by January 15, 1992.  The information requested included accounts receivable, contracts in progress, and assets of the clients' painting business.  On January 15, Plaintiff submitted an IRS form 433B, under Plaintiff's own signature.  The form showed accounts receivable of $18,500, and one contract in progress in the amount of $26,000.

However, Plaintiff did not identify the name or address of any of the accounts receivable or the contract in progress.  Instead, he aggregated the accounts receivable and identified them as "Various", and identified the contract in progress as "One Federal Agency."  Plaintiff does not deny his refusal to provide specific information concerning the accounts receivable or the contract in progress.  Instead, he attempts to justify it by explaining that the IRS had hounded these clients in the past, and had placed liens upon accounts receivable or contracts in progress, despite promises not to do so if the clients provided requested information.  Plaintiff wanted the IRS to enter into an installment payment agreement with his clients, and did not want the IRS to place liens upon the accounts receivable or contract in progress, in lieu of such an agreement.  Plaintiff also claimed the IRS summons was of doubtful legality because his clients probably did not owe any taxes.

There are several problems with Plaintiff's arguments.  For example, Plaintiff never provided any facts to the ALJ to support his claim that the summons was of doubtful legality, because he never provided any facts showing his clients did not owe the back taxes.  Plaintiff preferred to merely argue that proposition without providing the factual support necessary to evaluate his clients' claims.  Also, Plaintiff has never provided any citation to law indicating he had a right to unilaterally withhold information, requested in a summons, in order to prevent the IRS from lawfully placing liens on the basis of the information provided.  Either the IRS had a right to place liens on the accounts or the contract, or it did not, and Plaintiff could have tested that proposition in court or in administrative proceedings, had he provided the requested information and had the IRS attempted to impose the liens.  Instead, he chose to take the extrajudicial step of precluding the IRS from testing  the lien procedure, by refusing to provide the information.  Finally, Plaintiff cited no authority for the proposition that his clients had a legal right to deprive the IRS the security of liens and pay their back taxes through an installment agreement.  Plaintiff was therefore attempting to unilaterally impose such

8

a solution upon the IRS without any legal right to do so.  In sum, the Court must affirm the Secretary's determination that Plaintiff, without legal justification, refused to comply fully with a lawfully issued IRS summons.

The final charge sustained by the ALJ and the Secretary concerned a claim that Plaintiff had, through the use of threats, duress, or coercion, attempted to influence the official action of an officer of the IRS.  This claim arose out of the same factual circumstances as the charge discussed in the preceding paragraphs.  After Plaintiff refused to adequately comply with the IRS summons, the IRS decided to bypass Plaintiff as the representative of his clients' interests before the IRS.  Plaintiff, angered by this decision, wrote a letter to Ms. Miller, the chief of the IRS Albuquerque District's collection division.  In that letter, Plaintiff claimed the IRS and certain collection personnel had wrongfully caused the death of his clients' son.  Plaintiff maintained the IRS had engaged in predatory collection tactics, which led to severe medical problems for one of his clients.  The clients' son drove home from college to see his father, who was gravely ill.  On the way home, the son was unfortunately killed in an automobile accident.  Plaintiff's letter indicated there would be litigation on this matter, and warned Ms. Miller to proceed carefully.  Plaintiff also indicated he was looking for a good case to sue for damages, due to the tactics used by employees in Ms. Miller's division. Finally, Plaintiff concluded by saying, "you are either part of the problem or part of the solution.  This will be the last time I ask that you rescind a wrongful act and remove Sam Chavez from this case. Your acts or failures to act simply determine whether you are among the defendants and the jury's determination of damages."

The ALJ and the Secretary found this letter was an attempt to influence Ms. Miller to take certain action -- removing Sam Chavez from the case involving Plaintiff's clients.  They also found the letter constituted a "threat" as contemplated by the applicable regulation.  Plaintiff argues

vigorously that a threat to bring a lawsuit can never be considered disreputable conduct, and that the type of threat proscribed by the regulation is only a threat to do physical harm. The Court agrees that most statements indicating an intention to file a lawsuit, or to fully defend any legal action brought by the IRS, would not be considered a threat under the disreputable-conduct regulation. The Court does not agree, however, that only a threat to do physical harm may be considered disreputable conduct. *See, e.g., Anderson v. Boston School Committee*, 105 F.3d 762 (1st Cir. 1997) (quoting Massachusetts statute and stating that a threat involves the intentional exertion of pressure to make another person apprehensive). The troubling aspect of Plaintiff's threat in this case was that it was not merely a challenge to the legal merits of the IRS's case, or a warning concerning intended future legal action. Instead, Plaintiff was attempting to force Ms. Miller to undertake a particular personnel action, removing Sam Chavez from his clients' case, at the risk of being sued personally and being held personally liable not only for the death of an individual, but for actions taken by Ms. Miller's employees. There is a big difference between telling someone their position is without legal merit, and litigation will result if they pursue their current course of action, and what Plaintiff did in this case. His letter was clearly a threat, intended to influence a specific action by an IRS officer.

Nevertheless, this is clearly the least serious of the charges sustained by the ALJ and the Secretary, and standing alone would not likely support the disbarment. In combination with the other two charges, however, there was substantial evidence supporting the Secretary's decision to disbar Plaintiff from practice before the IRS, and that decision was not arbitrary, capricious, or otherwise contrary to law. Therefore, the Secretary's decision will be affirmed.

**Plaintiff's Lawsuit**

Subsequent to, and during the pendency of, the IRS effort to disbar Plaintiff from practice before that agency, Plaintiff filed a civil lawsuit seeking damages, injunctive relief, and declaratory

relief.  Plaintiff named as Defendants the United States, the Treasury Department, the IRS, the Secretary of the Treasury, a number of current or former IRS employees, the ALJ, and others.  The ALJ and certain other Defendants have already been dismissed pursuant to prior order of this Court.  Plaintiff's claims in this lawsuit consist of a number of tort claims, including interference with contractual relations, malicious prosecution, abuse of process, defamation, intentional infliction of emotional distress, and prima facie tort.  Plaintiff has also raised constitutional claims, and a claim that a state statute, NMSA 1978, § 61-28A-17(I), violates the United States Constitution.

Defendants have moved to dismiss the entire case, specifying a plethora of grounds for taking such action.  A number of these grounds are clearly meritorious and require little discussion.  For example, as Defendants point out, the Treasury Department and the IRS are not entities against which suit may be brought.  *See Whitcombe v. United States Dep't of Treasury*, 1991 WL 1690 (10th Cir. 1991); *Castleberry v. Alcohol, Tobacco & Firearms Div. of Treasury Dep't*, 530 F.2d 672, 673 n. 3 (5th Cir. 1976).  Accordingly, the IRS and the Treasury Department will be dismissed as parties to this suit.

**Tort Claims:**  Defendants also pointed out that Plaintiff's tort claims should be dismissed, because he did not present a claim to the agency involved – in other words, he did not exhaust his administrative remedies prior to filing suit.  Plaintiff does not contest the assertion that he failed to present any tort claim to the appropriate agency, within the two-year period provided by 28 U.S.C. § 2401(B).  In effect, therefore, he concedes that dismissal of his tort claims is proper, insofar as they are brought under the Federal Tort Claims Act.  *See, e.g., Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 967-68 (10th Cir. 1994) (under FTCA, filing administrative claim with appropriate federal agency is a prerequisite to bringing a civil action against United States for damages for negligence or wrongful act of any United States employee).  In fact,

11

in his brief in opposition to the motion to dismiss, Plaintiff specifically stated his claims are not brought under the Tort Claims Act, but instead are claims for constitutional torts.  Therefore, due to Plaintiff's failure to exhaust his administrative remedies as well as his specific disavowal of the claims as tort claims, his tort claims will be dismissed.[1]

*Bivens* **Claims -- Personal Service:**  The only possible claims remaining to Plaintiff following the above dismissal are *Bivens* claims against the individual IRS-employee Defendants, for constitutional torts.  Since such claims are brought against government employees in their individual capacity, rather than their official capacity, personal service upon the employees is required pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.  *See Simpkins v. District of Columbia Government*, 108 F.3d 366 (D.C.Cir. 1997); *DeSpain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436 (10th Cir. 1994) (affirming dismissal of suit alleging violation of constitutional rights, due to

---

[1]The Court notes there are other reasons for dismissing at least some of the tort claims.  For example, the FTCA specifically does not waive immunity for interference with contract rights, malicious prosecution, abuse of process, or defamation.  28 U.S.C. § 2680(h).  Given the failure to exhaust administrative remedies in this case, it is not necessary to address these other grounds for dismissal of the tort claims.  The Court also notes that by dismissing the tort claims, the Court is also dismissing as parties all Defendants except the individual IRS employees who took actions about which Plaintiff complains.  This is because there is no supervisory or *respondeat superior* liability in *Bivens* actions.  *See, e.g., Bibeau v. Pacific Northwest Research Found.*, 188 F.3d 1105, 1114 (9th Cir. 1999).  To the extent Plaintiff complains about individual actions taken by Defendant Rubin, the Secretary of the Treasury, and the unnamed Defendant identified as Commissioner of the IRS, the Court will dismiss those claims as well.  Plaintiff's amended complaint contains only conclusory allegations concerning Defendant Commissioner's "conspiracy" with lower-level IRS personnel.  Such conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss.  *See Weatherall v. Scherbarth*, 2000 WL 223576 (10th Cir. 2000).  Furthermore, by naming this Defendant only as "Commissioner" and not by name, Plaintiff has sued him or her only in an official capacity, rather than individually, and *Bivens* actions must be brought against individuals.  As to Defendant Rubin, Plaintiff's only allegation is that he delayed decision on Plaintiff's appeal from the ALJ's decision, and then ruled against Plaintiff after Plaintiff filed this lawsuit.  This claim is frivolous.  Defendant Rubin did not write the ruling affirming the ALJ; instead, it was written by the general counsel's office of the Treasury Department.  Furthermore, to the extent Defendant Rubin may have been involved in the administrative proceeding and decision, he is entitled to the same immunity this Court has already granted the ALJ and the IRS employees who litigated the matter.

failure to timely serve individual defendants).  If the required personal service has not been obtained, this Court has no jurisdiction over the individual Defendants and may not proceed to a consideration of the merits.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

Individual Defendants argue they were never personally served with process in this case, and have submitted affidavits to that effect.  In response, Plaintiff argues that Defendants' counsel was served by mail, and that service was otherwise proper under New Mexico law.  He also argues that if proper service was not obtained, he should be given another opportunity to effect service.  The Court has reviewed the returns of service and the affidavits of the individual Defendants, all of which have been filed with this Court.  From these documents, the following information can be gleaned.  None of the individual Defendants was personally handed the summons and complaint.  Instead, Plaintiff's process server simply delivered each Defendant's summons and complaint to the IRS service window at the Albuquerque IRS office.  This lack of personal service is clear from examination of the back of the return-of-service form; none of the boxes for "Served personally upon the defendant" have been checked, and instead the boxes for "Other" have been checked, and the explanation written on each form is that the documents were delivered to the IRS service window.  Several of the Defendants were no longer employed with the Albuquerque office at the time service was attempted in this manner – Matilda Walling and Reba Johnson retired before this lawsuit was filed, and Joella Apodaca, Patricia Andrews, and Patricia Miller were employed at other IRS offices, in other states.[2]  Other Defendants, including Sam Chavez, Mary Engdahl, and Lou Nez, were still employed at the Albuquerque IRS office and received copies of the summons and complaint through the interoffice mail.

---

[2]The Court has no evidence concerning Defendant Sandy Hayes.  Defense counsel informs the Court that Sandy Hayes is a former IRS employee who has not been contacted, and he does not represent her in her personal capacity.

13

As to the Defendants who no longer worked at the IRS office in Albuquerque, leaving copies of the complaint and summons at the IRS service window was plainly inadequate to effect personal service. Rule 4(e) requires that a copy of the summons and complaint be delivered to the individual personally, or be left at the individual's dwelling with a person of suitable age and discretion residing at the dwelling. Nothing in Rule 4(e) allows service to be accomplished by delivering the summons to a defendant's former place of employment.

As to the three Defendants still employed at the Albuquerque office at the time service was attempted, the question is somewhat closer. The process server did not hand the summons and complaint to these Defendants personally, as required by the rule, but did at least leave them with a responsible person at these Defendants' current place of employment. As noted above, each of these Defendants received a copy of the summons and complaint through the interoffice mail. The Court's review of the applicable case law, however, establishes that leaving a summons and complaint at a defendant's place of employment, with someone other than the defendant herself, is insufficient service of process. *See* 4A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1096 (1987); *Gerritsen v. Consulado General de Mexico*, 989 F.2d 340, 344 (9th Cir. 1993) (leaving process with co-worker insufficient); *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) (service at place of employment insufficient to obtain jurisdiction over defendants in *Bivens* case); *Smith v. Lujan*, 780 F.Supp. 1275, 1283 (D.Ariz. 1991) (same); *Cheek v. Doe*, 110 F.R.D. 420, 421-22 (N.D.Ill. 1986) (leaving copy with employees at IRS district office insufficient), *rev'd in part on other grounds,* 828 F.2d 395 (7th Cir. 1987); *cf. Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 579 (N.D.Cal. 1999) (e-mail service at work insufficient).

Plaintiff has argued briefly that service in this case was adequate under New Mexico law. Since the relevant portions of New Mexico's rule on service are identical to the federal rule, and

14

allow service either personally or at one's dwelling, the Court rejects this assertion. *See* SCRA 1-004(F). To the extent Plaintiff may be arguing that service upon Defendants' counsel was adequate, the Court points out that SCRA 1-005, allowing service upon a party's counsel, does not apply to the initial service of process, but only to subsequent pleadings in the case. *See Brown v. Our Lady of Lourdes Medical Center*, 767 F.Supp. 618, 622 (D.N.J. 1992). The Court will find proper service was not obtained with respect to any individual Defendant, under either New Mexico law or federal law.[3]

**Extension of Time to Effect Service:** As noted above, Plaintiff has requested an opportunity to effect proper service if the Court should determine such service has not already been obtained. In deciding whether to dismiss for improper service, or to allow another opportunity to effect service, this Court must engage in a two-pronged inquiry. First, the Court must determine whether good cause has been shown for the failure to serve Defendants. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000); *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). If good cause exists, Plaintiff is entitled to a mandatory extension of time in which to serve Defendants. *Id.* If good cause has not been established, the second prong of the inquiry comes into play -- this Court still has discretion to grant Plaintiff an extension of time in which to effect service. *Id.*

The "good cause" standard, as interpreted by the courts, is quite restrictive. Inadvertence, negligence, ignorance of the service requirements, and reliance on a process server have all been determined not to constitute good cause. *See Broitman v. Kirkland,* 86 F.3d 172, 174 (10th Cir. 1996); *Cox v. Sandia Corp.*, 941 F.2d 1124, 1125-26 (10th Cir. 1991). Similarly, the fact that a

---

[3]The Court's finding applies to Defendant Hayes as well as the other Defendants, as it is apparent from the return of service that no personal service was obtained as to her. Even though defense counsel is not representing Ms. Hayes in her individual capacity, the Court will *sua sponte* determine there is no personal jurisdiction over her in this lawsuit.

defendant may have had actual notice of the suit, and has suffered no prejudice, does not constitute good cause.  *See DeSpain*, 13 F.3d at 1438-39.  In this case, Plaintiff has not explained why the service was inadequately performed.  It is apparent, however, that his only possible excuses are reliance on the process server and either neglect or ignorance of the proper service requirements.  The fact that none of the individual Defendants was served personally was apparent on the return-of-service forms, so Plaintiff either did not examine those forms or assumed that leaving the complaints at the IRS service window was sufficient to effect service.  Whether Plaintiff simply relied on the process server to perform the proper service, or simply failed to realize proper service had not been obtained, good cause has not been shown for the failure to properly serve Defendants.  Furthermore, as to the Defendants who no longer worked for the Albuquerque IRS office, Plaintiff's failure to investigate whether they still worked there can clearly not be considered good cause.

Having determined that Plaintiff has not established good cause for the inadequate service of process in this case, the Court will consider whether to grant Plaintiff an extension of time in which to effect service.  The case was originally brought as an official-capacity and individual-capacity lawsuit, and included claims against the United States as well as the individual Defendants.  The United States was apparently properly served, as well as the Attorney General.  *See* Rule 4(i), F.R.C.P.  It was not until Plaintiff abandoned his tort claims and proceeded solely under *Bivens* that the absolute necessity for personal service of the individual Defendants became apparent.  Furthermore, all of the individual Defendants (except, possibly, Ms. Hayes) received notice of the lawsuit, as is evidenced by their affidavits.  If Plaintiff's constitutional-tort claims had colorable merit, therefore, the Court would be inclined to grant the requested extensions of time, at least for purposes of attempting to serve those Defendants that were still employed at the Albuquerque IRS office at

16

the time the lawsuit was filed.[4]  As discussed below, however, none of the claims are viable, for various reasons.[5]

Several of the tort claims brought by Plaintiff clearly cannot be maintained as constitutional-tort actions.  For example, Plaintiff's claims for interference with contract, intentional infliction of emotional distress, and prima facie tort do not appear to the Court to implicate any constitutionally-protected right, and Plaintiff has not directed the Court's attention to such a right.  Therefore, these claims are not properly the subject of this *Bivens* action.  *See, e.g., Albright v. Oliver*, 510 U.S. 266, 271 (1994) (first step in a § 1983 action is to identify the specific constitutional right allegedly infringed, as § 1983 is not a source of substantive rights; similarly, *Bivens* actions are based on deprivation, by federal employees, of specific constitutional rights).  The remaining torts, malicious prosecution/abuse of process and defamation, have been held to be actionable as constitutional torts under some circumstances, as discussed below.  In addition, Plaintiff's First Amendment retaliation claim is clearly of constitutional dimension.  The Court therefore will consider the viability of these claims.

---

[4]As to the other Defendants, Plaintiff's complete failure to make any effort to determine where they were employed, or if they were still employed, militates against the grant of any extension of time.

[5]Defendants have argued that Plaintiff cannot maintain any *Bivens* claim against them, because his sole remedy for their alleged actions was the ability to administratively challenge his disbarment from practice before the IRS.  Defendants rely on *Schweiker v. Chilicky*, 487 U.S. 412 (1988), which held no *Bivens* action is available for a denial of Social Security benefits, because Congress created an extensive administrative scheme for protesting such actions.  In this case, however, all Congress did was grant the authority to disbar practitioners before the IRS, after notice and opportunity for a proceeding.  Congress did not outline the procedures to be followed in the authorized proceeding. Therefore, *Chilicky* is inapplicable.  *See Krueger v. Lyng*, 927 F.2d 1050 (6th Cir. 1991) (where Congress empowered agency heads to prescribe regulations, a remedial scheme created entirely by regulation, rather than act of Congress, did not foreclose a *Bivens* action).  It is therefore necessary to examine each of Plaintiff's constitutional-tort claims.

**Malicious Prosecution/Abuse of Process:**  The government concedes there is no statute of limitations problem with these claims, since the limitations period on such claims does not begin to run until the underlying action, which is the basis for the claims, has concluded.  The administrative proceedings in this case did not end until December 11, 1997, when the Secretary issued his decision affirming the ALJ's disbarment of Plaintiff.  By that time, Plaintiff had already filed this lawsuit, and the government's concession as to the statute-of-limitations issue is correct.

The government does contend that malicious prosecution and abuse of process are only actionable, in the constitutional-tort arena, under the Fourth Amendment.  Given that, the government argues no seizure occurred in this case, as the administrative proceedings were not a criminal matter, and Plaintiff therefore may not maintain a *Bivens* action for malicious prosecution or abuse of process.  The government is correct that, where a plaintiff is complaining of government action in filing or prosecuting a criminal case, and the constitutional harm that occurred was an unconstitutional seizure of the person, the malicious-prosecution *Bivens* action must be pursued under the Fourth Amendment.  *See Albright v. Oliver.*  However, it is conceivable that malicious prosecution of a civil action could also deprive a person of a constitutional right other than a Fourth Amendment right, and it is not apparent that the *Albright* court intended to eliminate civil malicious prosecution or abuse of process as a basis for a *Bivens* action.  Furthermore, a constitutional claim for malicious use of civil process has been recognized by the Third Circuit, in *McArdle v. Tronetti*, 961 F.2d 1083, 1088 (3d Cir. 1992).  Therefore, the Court will find Plaintiff's malicious prosecution/abuse of process claims are not automatically foreclosed by the fact that no seizure of his person occurred as a result of Defendants' alleged actions.

It is necessary, however, to determine whether a deprivation of a constitutional right has occurred, to determine whether Plaintiff's claims are viable.  *See Torres v. Superintendent of the*

18

*Police of Puerto Rico*, 893 F.2d 404, 409 (1st Cir. 1990). The most obvious candidate in this case is Plaintiff's liberty interest in pursuing his chosen occupation. *See, e.g., Phelps v. Wichita Eagle Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989) (where plaintiff's status as a lawyer and his existing legal rights are significantly altered, a claim for deprivation of a liberty or property interest might exist); *Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384, 1396-97 (10th Cir. 1988) (discussing types of significant impacts on employment that could rise to level of deprivation of liberty). Plaintiff in this case has not been precluded from practicing as a CPA. However, it is at least arguable that his disbarment from practice before the IRS has an immediate and serious impact on the practice of his profession. The Court will therefore find Plaintiff's liberty interest in practicing his profession has been implicated in this case.

Where Plaintiff's action falls short, however, is in demonstrating that acts of malicious prosecution have caused the deprivation of his liberty interest. As to the three charges that were sustained by the ALJ, the Secretary, and now this Court, the unsuccessful conclusion of those charges precludes any claim of malicious prosecution or abuse of process. *See, e.g., DiCesare v. Baldridge*, 1998 WL 476781 (10th Cir. 1998) (one element of malicious prosecution claim is favorable termination of underlying litigation); *see also DeVaney v. Thriftway Marketing Corp.*, 953 P.2d 277, 286 (1997) (unfavorable termination of underlying litigation, for malicious-abuse-of-process plaintiff, is conclusive evidence of existence of probable cause for the litigation). Given this problem, Plaintiff understandably focuses on the twenty claims he maintains were either dropped by the government prior to the administrative hearing or were dismissed by the ALJ. However, since these twenty claims were not the basis of Plaintiff's disbarment, they cannot be said to be the cause of that disbarment. Therefore, they are not the cause of the alleged deprivation of constitutional right to practice his

19

profession.  Plaintiff's malicious prosecution and abuse of process claims, therefore, have no merit as constitutional torts.

**Defamation:**  There are at least two barriers to Plaintiff's defamation claim as a constitutional tort, one procedural and one regarding the merits.  Defendants  have raised a statute-of-limitations defense to this claim.  According to Plaintiff's complaint, the defamatory statements that are the basis of his claim were made in 1991 and 1992.  His lawsuit was not filed until October 1997, approximately five years after the last allegedly defamatory statement.  For *Bivens* cases filed in New Mexico, the applicable statute of limitations is three years.  *See Murphy v. Romero*, 1998 WL 438794 (10th Cir. 1998) (*Bivens* actions, like § 1983 actions, are subject to the statute of limitations of the general personal injury statute of the state where the action arose; New Mexico's applicable limitations period is three years).  Unless some exception to the statute exists, then, Plaintiff's defamation claim is clearly barred.

Plaintiff argues the limitations period did not begin to run until the administrative proceedings, which were triggered by the defamatory statements, concluded.  In other words, he contends that if defamatory statements lead to litigation, either at the administrative level or in court, the limitations period is tolled while the dispute remains pending in any forum.  Plaintiff cited no authority for this proposition, and the Court has found none.  Furthermore, exhaustion of administrative remedies is not required before a § 1983 or *Bivens* action may be brought.  *See Patsy v. Bd. of Regents*, 457 U.S. 496 (1982).  Since that is true, pursuing one's administrative remedies does not toll the statute of limitations for such an action.  *See Coleman v. O'Grady*, 1994 WL 66684 (7th Cir. 1994).  Plaintiff was not required to wait until the administrative proceedings ended to pursue his *Bivens* defamation claim, and it is therefore barred by the applicable statute of limitations.

Plaintiff's constitutional defamation claim also would fail on the merits. The analysis is similar to the malicious prosecution discussion above. To be actionable as a constitutional tort, defamation must impact on a constitutionally protected interest, in this case the liberty interest in practicing one's profession; impact on a person's reputation or possible future employment prospects is not sufficient. *See Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997) (where defamation is such as to foreclose a party's freedom to take advantage of employment opportunities, a deprivation of liberty of employment or occupation may have occurred). Insofar as Plaintiff complains of defamatory statements that led to the twenty charges allegedly withdrawn or dismissed, those statements caused no immediate, tangible impact on his professional status, and they are not actionable as constitutional torts. Furthermore, as to any allegedly defamatory statements that formed the basis of the three charges that were sustained, those statements have impliedly been found to be true, by the ALJ. The ALJ's implied finding has been upheld by the Secretary and in turn by this Court. Therefore, Plaintiff is barred by the doctrine of collateral estoppel, or issue preclusion, from attempting to now show the statements were false. *See Saavedra v. City of Albuquerque*, 73 F.3d 1525, 1534-35 (10th Cir. 1996) (common-law doctrines of res judicata and collateral estoppel apply to final determinations of administrative bodies). In sum, having lost on the three charges in the administrative hearing and on appeal, Plaintiff cannot now bring a lawsuit claiming the factual bases for those charges are false.

**First Amendment Retaliation:** Plaintiff alleges the disbarment proceedings were brought against him to retaliate against him, for being a frequent and vociferous critic of the IRS and for vigorously representing his clients before the IRS. These allegations clearly state a claim for retaliation for exercising his First Amendment rights. *See, e.g., Bloch v. Ribar*, 156 F.3d 673, 678-79 (6th Cir. 1998) (right to criticize public officials is constitutionally protected activity; may be basis of § 1983 action if officials act in retaliation for criticism); *Barrett v. Harrington*, 130 F.3d 246, 262-

21

63 (6th Cir. 1997) (same); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194-95 (2d Cir. 1994) (rights to complain to public officials and seek administrative or judicial relief are protected by the First Amendment).  If Plaintiff could establish that Defendants acted at least in part out of retaliatory motives, it would not matter that at least some of the charges made by Defendants have been found to be meritorious.  *See DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) (act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act would have been proper, if taken for a different reason).  In this case, however, Plaintiff waited too long to bring his *Bivens* lawsuit, and the statute of limitations bars his retaliation claim.

The retaliatory actions of which Plaintiff complains are the accusations made against him by the individual IRS-employee Defendants, and the initiation of the disbarment proceeding against him. All of these actions took place in 1991 and 1992.  As noted above, Plaintiff did not file his lawsuit until October of 1997, and the statute of limitations for his *Bivens* claims is three years.  Again, as with the defamation claim discussed above, Plaintiff was not required to wait until the administrative proceeding concluded to bring his lawsuit.  At any time after the accusations were made and the disbarment proceeding was initiated, Plaintiff could have filed his *Bivens* action alleging the IRS had acted out of retaliation for his exercise of First Amendment rights.  Instead, he waited almost five years to take such action.

As discussed above, none of Plaintiff's *Bivens* claims would be viable even if he were given an opportunity to attempt proper service on the individual Defendants.  Therefore, the Court declines to grant him an extension of time, and will dismiss his lawsuit for failure to effect personal service within 120 days.

**CONCLUSION**

22

Based on the foregoing discussion, the administrative decision disbarring Plaintiff from practicing before the IRS will be affirmed. In addition, his lawsuit against the IRS, the United States, and other Defendants will be dismissed in its entirety.

Dated this 31st day of October, 2000.


BRUCE D. BLACK
United States District Judge


**ATTORNEYS**:

**For Plaintiff**:
Andrew Leo Lopez, pro se
P.O. Box 12035
Albuquerque, New Mexico 87195


**For Defendants**:
Paula M. Junghans
Louise P. Hytken
Joseph A. Pitzinger
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75242